O

# United States District Court
# Central District of California

ANTHONY NUNO,

Plaintiff,

v.

DEBORAH BOSCHINI et al.,

Defendants.

Case № 2:25-cv-06430-ODW (AJRx)

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [51]**

## I.    INTRODUCTION

Plaintiff Anthony Nuño brings this civil rights action against Defendants Deborah Boschini; California State University, Bakersfield ("CSUB"); Board of Trustees of California State University; Steven Gamboa; Alicia E. Rodriquez; Marcus Brown; Lena Taub-Robles; and Maryann Parada. (Second Am. Compl. ("SAC"), Dkt. No. 50.) Nuño now moves for a preliminary injunction requiring Defendants to reinstate him to teaching duties, restore access to CSUB systems, and lift restrictions imposed during an ongoing investigation. (Mot. Prelim. Inj. ("Mot." or "Motion"), Dkt. No. 51.) For the reasons discussed below, the Court **DENIES** the preliminary injunction.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15; *S.F.-Oakland Newspaper Guild v. Kennedy ex rel. NLRB*, 412 F.2d 541, 546 (9th Cir. 1969).

## II.    BACKGROUND

### A.    Nuño's Employment

Nuño is a tenured professor at CSUB, a public university within the California State University system.  (SAC ¶ 4.)  He specializes in Latin American Literatures and Cultures, Chicanx Literatures and Cultures, Literary Theory, and Gender Studies.  (*Id.*)  Nuño is seventy-three years old and the most senior faculty member of his department. (*Id.*)  He is of Hispanic, Mexican-American, and Indigenous heritage, is gay, and has documented physical and psychological disabilities.  (*Id.*)

### B.    The Collective Bargaining Agreement

A Collective Bargaining Agreement ("CBA") governs the relationship between CSUB and its faculty, including Nuño.  (Defs.' Compendium Evid. ISO Opp'n ("CSUB Compendium") Ex. 1 ("CBA"), Dkt. No. 54-4.)  The CBA sets substantive standards of professional conduct and establishes detailed procedures for addressing allegations of misconduct.  (*See generally* CBA.)  It expressly prohibits faculty from engaging in discrimination and harassment.  (*Id.* art. 16.)  CSUB's nondiscrimination policy separately prohibits discrimination and harassment based on protected status, sexual harassment, violence, sexual misconduct, and retaliation.  (CSUB Compendium Ex. 2 ("CBA Nondiscrimination Policy") 1–2, Dkt. No. 54-5.)  When such allegations arise, faculty may file a grievance with the Office of Civil Rights and Compliance ("OCRC"). (Decl. Deborah Boschini ISO Opp'n ("Boschini Decl.") ¶ 4, Dkt. No. 54-2.)  CSUB may impose interim, non-disciplinary measures while an investigation is ongoing. (CBA art. 17.)  For example, CSUB may temporarily suspend a faculty member with pay when "strong and compelling evidence" shows that suspension is necessary to protect individuals, prevent disruption to campus operations, or allow an investigation to proceed without interference.  (*Id.*)  These suspensions are non-punitive and preserve the faculty member's salary and benefits.  (*Id.*)  CSUB may extend a temporary suspension while the investigation is ongoing.  (*Id.*)

2

## C.    Equal Employment Opportunity Commission Charge

On April 16, 2024, Nuño submitted a charge with the Equal Employment Opportunity Commission ("EEOC").  (CSUB Compendium Ex. 19 ("EEOC Inquiry List"), Dkt. No. 54-7.).)  In his charge, Nuño alleged that he has been "subjected to different terms and conditions of employment" and faces "constant retaliation at work." (CSUB Compendium Ex. 20 ("EEOC Charge") 2, Dkt. No. 54-7.)  Nuño also indicated that CSUB "discriminated against [him] due to his [r]ace." (*Id.* at 3.)

On November 6, 2024, Nuño sent a letter to the EEOC, alleging that he faced continued "retaliation, harassment, [d]efamation and [r]ace discrimination."  (Decl. Anthony Nuño ISO Mot. ("Nuño Decl.") Ex. H ("EEOC Letter") 1, Dkt. No. 51-1.)  He also alleged that CSUB denied him institutional opportunities and instead favored a white faculty member who did not meet minimum requirements.  (*Id.* at 2.)

On April 16, 2025, the EEOC issued a Notice of Right to Sue.  (CSUB Compendium Ex. 21 ("EEOC Notice"), Dkt. No. 54-7.)

## D.    Complaints Against Nuño

Before Nuño filed his EEOC charge, several faculty members filed complaints and grievances against Nuño alleging discrimination and harassment.  On April 9, 2024, Professor Gladys Gilliam filed a grievance with CSUB alleging discriminatory conduct against Nuño, which CSUB referred to OCRC. (Boschini Decl. ¶ 5.)  On May 17, 2024, Professor Maryann Parada filed a complaint against Nuño directly with OCRC.  (*Id.* ¶ 6; CSUB Compendium Ex. 3 ("Parada NOA"), Dkt. No. 54-5.)  On May 17, 2024, OCRC issued a Notice of Investigation on Parada's complaint.  (Boschini Decl. ¶ 7.) On September 16, 2024, Professor Lena Taub-Robles filed a consolidated grievance with CSUB alleging discriminatory conduct against Nuño, which CSUB likewise referred to OCRC.  (*Id.* ¶ 8.)  On September 27, 2024, Gillam, Parada, and Taub-Robles filed a statutory grievance against Nuño.  (*Id.* ¶ 9.)  As of April 15, 2026, that grievance is still pending.  (*See id.*)

**E.    CSUB Interim Measures**

While the investigations remained pending, CSUB imposed interim measures restricting Nuño's contact with the complainants.  (*Id.* ¶¶ 10–11; CSUB Compendium Exs. 4–5 ("2025 Interim Measures"), Dkt. No. 54-5.)  Nuño violated those measures. (Boschini Decl. ¶ 13.)  Specifically, on June 17, 2025, after CSUB announced the appointment of a new Graduate Director, Nuño sent an email to his entire department expressing his disagreement with CSUB's decision-making process.  (*See* Supp. Decl. Anthony Nuño ISO Reply Ex. T ("Nuño Email"), Dkt. No. 56-1.)  The email recipients included complainants Parada and Taub-Robles.  (*See id.*)

As a result, on July 2, 2025, CSUB reprimanded Nuño.  (CSUB Compendium Ex. 9 ("Reprimand"), Dkt. No. 54-5.)  On July 16, 2025, Nuño, through his counsel, sent a cease-and-desist letter to CSUB.  (Nuño Decl. Ex. A ("Cease-and-Desist"), Dkt. No. 51-1.)  In the letter, Nuño identified several instances of alleged discrimination and retaliation that he claimed to have experienced.  (*See generally id.*)

On July 18, 2025, the independent investigator retained by CSUB issued a final investigation report on Parada's complaint.  (*See* Boschini Decl. ¶ 14.)  The investigator found that Nuño engaged in discrimination, harassment, and retaliation.  (CSUB Compendium Ex. 10 ("Parada Investigation Report") 76–80, Dkt. No. 54-5.)  Based on those findings, on August 14, 2025, CSUB placed Nuño on a sixty-day paid suspension pursuant to Article 17 of the CBA.  (CSUB Compendium Ex. 11 ("August 2025 Suspension"), Dkt. No. 54-6.)  As the OCRC investigation remained ongoing and final determinations had not been reached, CSUB has extended the suspension four times: on October 10, 2025; December 5, 2025; February 9, 2026; and April 10, 2026. (Boschini Decl. ¶ 16.)  CSUB cited the investigation's complexity, the complainants being members of the same department as Nuño, the need to evaluate additional allegations that arose during the investigation process, and Nuño's lack of cooperation as reasons for the extensions.  (*Id.* ¶¶ 17–22.)  Nuño remained in active pay status and received regular salary and benefits during the suspension.  (August 2025 Suspension.)

## F.    Procedural History and Related Actions

On July 15, 2025, Nuño initiated this action against Defendants, asserting claims for discrimination, retaliation, and various constitutional and statutory violations arising out of his employment as a tenured faculty member.  (*See generally* Compl., Dkt. No. 3.)

However, this action does not arise in isolation.  In 2017, Nuño filed an action against CSUB in Kern County Superior Court, alleging claims of discrimination, harassment, and retaliation.  (Decl. Alec D. Tyra ISO Opp'n ("Tyra Decl.") ¶ 2, Dkt. No. 54-1.)  The state court entered judgment in favor of CSUB.  (CSUB Compendium Ex. 16 ("Judgment"), Dkt. No. 54-7.).)  A Court of Appeal dismissed Nuño's appeal as untimely and the California Supreme Court denied Nuño's petition for review.  (Tyra Decl. ¶ 5; CSUB Compendium Ex. 18 ("PFR Denial"), Dkt. No. 54-7.)

Additionally, in January 2026, Nuño filed an application for a temporary restraining order ("TRO") in Sonoma County Superior Court, seeking injunctive relief relating to his suspension.  (Tyra Decl. ¶ 9.)  The state court summarily denied Nuño's TRO.  (*Id.*)  In February 2026, Nuño filed another TRO in state court, again seeking to enjoin his suspension.  (*Id.*)  After a hearing, that court also denied Nuño's TRO.  (*Id.*)

Nuño now moves for a preliminary injunction in this action, seeking an order requiring Defendants to reinstate him to teaching duties, restore his institutional email account, and cease and desist from further extending his suspension.  (Mot. 7–9.)

## III.    LEGAL STANDARD

A court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  "An injunction is an exercise of a court's equitable authority," which should not be invoked as a matter of course, but "only after taking into account all of the circumstances that bear on the need for prospective relief."  *Salazar v. Buono*, 559 U.S. 700, 714 (2010).  To obtain this relief, the plaintiff must establish the "*Winter*" factors: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm if the preliminary relief is not granted; (3) that the

balance of equities tips in his favor; and (4) that the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (citation modified).

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The burden of demonstrating the need for a preliminary injunction rests with the moving party. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The moving party must meet this burden with a "clear showing" that the preliminary injunction is warranted. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003).

Prohibitory injunctions preserve the status quo by ordering the defendant to refrain from certain acts. *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017); *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory injunctions, on the other hand, "go[] well beyond simply maintaining the status quo," and instead order a party to "take action." *Stanley*, 13 F.3d at 1320. The burden on a plaintiff seeking a mandatory injunction is "doubly demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). He must "establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Id.* A court's finding of a strong likelihood that the plaintiff "would succeed on the merits" of his claims "also evidences a conclusion that the law and facts clearly favor." *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1157 (9th Cir. 2007).[2]

---

[2] As Nuño seeks an order that CSUB "take action" by reinstating him to teaching duties and restoring his campus access, this case involves a mandatory injunction. *See Stanley*, 13 F.3d at 1320.

## IV.   DISCUSSION

The Court finds that Nuño is not entitled to a preliminary injunction because he has not demonstrated that he is likely to succeed on the merits of his claims.

### A.   Likelihood of Success on the Merits

Nuño argues that he is likely to prevail on three independent claims: (1) Title VII retaliation; (2) First Amendment retaliation; and (3) age discrimination under the Age Discrimination in Employment Act ("ADEA").  (Mot. 14–17.)

#### 1.   *Title VII Retaliation—Exhaustion and Preclusion*

Before considering whether Nuño has shown a likelihood of success on the merits of his Title VII claim, the Court addresses Defendants' threshold jurisdictional arguments that Nuño's Title VII retaliation claim has not been properly exhausted and is subject to preclusion.  (Opp'n 14–16.)

##### a.   Exhaustion

Defendants first argue that Nuño "failed to exhaust the required administrative prerequisites" of his Title VII claim.  (*Id.*)

"To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002).  "Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC." *Id.*  Courts construe an EEOC charge with "utmost liberality." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).  "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989).  "The district court has jurisdiction over any charges of discrimination that are . . . reasonably related to the allegations in the EEOC charge, or that fall within the EEOC investigation which can reasonably be expected to grow out the charge of discrimination." *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) (citation modified).

In his EEOC charge and subsequent submission, Nuño alleged ongoing retaliation, harassment, and discriminatory exclusion from departmental opportunities, failure to investigate complaints, and retaliatory conduct by many of the same CSUB administrators and faculty allegedly involved in his suspension, including Boschini, Parada, Brown, and Gamboa.  (EEOC Charge 1–2; EEOC Letter 1–2.)  The suspension involved largely the same parties, same disputes, same alleged retaliatory motive, and same course of allegedly escalating conduct already before the EEOC.  (*See generally* Compl.)  Under Ninth Circuit precedent, Nuño's later suspension could "reasonably be expected to grow out of" the EEOC charge and investigation into Nuño's allegations of ongoing retaliation and discriminatory treatment.  *Deppe*, 217 F.3d at 1267.

Accordingly, the Court finds that Nuño has exhausted his administrative remedies and that subject matters jurisdiction exists over Nuño's Title VII retaliation claim.

### a.    Preclusion

Defendants next argue that Nuño's claim is precluded because Nuño's allegations supporting his claim are "encompassed in the prior state action."  (Opp'n 15–16.)

Federal courts "accord the same res judicata effect to state court judgments that the jurisdiction of their rendition would give them."  *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438 (9th Cir. 1985) (emphasis omitted).  Under California law, claim preclusion applies only where (1) a claim raised in the present action is the same as that litigated in a prior proceeding, (2) the prior proceeding resulted in a final judgment on the merits, and (3) the party to be precluded was a party, or in privity with a party, to the prior proceeding.  *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).  California courts apply the "primary rights" theory, under which claim preclusion bars only claims arising from the same injury to the same primary rights.  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002).  Claim preclusion "generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (citation modified).

On this record, the Court does not find that Nuño's Title VII claim is precluded. Although Defendants point to Nuño's 2017 state court action involving allegations of discrimination and retaliation against CSUB, (Tyra Decl. ¶ 2), the conduct underlying that action appears to differ from the conduct litigated here.  This case centers on Nuño's suspension, the subsequent extensions of the suspension, and alleged discrimination arising from Nuño's more recent activity and workplace disputes.  (Compl. ¶¶ 17–29; August 2025 Suspension.)  Further, these events postdate the events at issue in the prior proceeding and thus could not have been fully litigated in the 2017 action.

Nor is this Court persuaded that both actions involve the same primary rights. The 2017 action concerned alleged discriminatory conduct that occurred years earlier, while this action challenges a distinct course of alleged retaliatory conduct and disputes that culminated in Nuño's suspension.  Lastly, not all defendants named in this action were parties, or in privity with parties, to the prior action.

Accordingly, the Court finds that, at this preliminary injunction stage, Nuño's Title VII claim is not barred by claim preclusion.

2.    *Title VII Retaliation—Merits*

Nuño argues that he shows a likelihood of success on his Title VII retaliation claim because the temporal proximity between this lawsuit and his suspension "gives rise to an inference of retaliatory motivation." (Mot. 14–16.)

Courts evaluate Title VII retaliation claims under a "two-step, burden-shifting approach" set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a prima facie case of retaliation.  411 U.S. at 802–04.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "advance a legitimate, nonretaliatory reason" for the adverse employment action.  *Id.*  If the defendant offers such a reason, the plaintiff has the "ultimate burden" of showing that the proffered reason was merely a "pretext" for the unlawful retaliatory motive.  *Id.*

a.     Prima Facie Case

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 693 (9th Cir. 2017).

Here, Defendants do not dispute that Nuño satisfies the first two requirements of a prima facie case of retaliation. (Opp'n 16–17, Dkt. No. 54.)  Nor could they.  The record reflects that Nuño engaged in protected activity before CSUB suspended him, including filing reports of discriminatory institutional practices.  (Nuño Decl. ¶ 2); *see Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (holding that when an employee protests the actions of his employer, such protest is a protected activity).  Moreover, CSUB removed Nuño from teaching duties, barred him from campus, and restricted his contact with students and faculty.  (August 2025 Suspension.)  At the prima facie stage, that is enough to show an adverse action.  *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) ("[A]n adverse employment action [is any action that] is reasonably likely to deter employees from engaging in protected activity").  Thus, Nuño satisfies the first two requirements of a prima facie retaliation case.

The causation requirement presents the parties' central dispute.  Nuño argues that the thirty-one day gap between this lawsuit and his suspension "establishes causation by temporal proximity."  (Mot. 14.)  Defendants contend that Nuño cannot establish causation because he fails to show that Defendants suspended him because of his protected activity.  (Opp'n 16–17.)

Courts may infer causation based on the proximity in time between the protected action and the alleged retaliatory employment. *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003).  However, the Ninth Circuit has rejected "a bright-line rule about the timing of retaliation." *Id.* at 978.  "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Id.*

10

Here, the record does not support Nuño's theory that temporal proximity alone establishes causation.  Beginning in April 2024, more than a year before his suspension, Nuño had been the subject of several complaints and investigations.  (Boschini Decl. ¶¶ 5–9.)  CSUB first imposed lesser measures, but Nuño violated those measures.  (*Id.* ¶¶ 10–13.)  Moreover, one investigation had already resulted in sustained findings of discrimination, harassment, and retaliation.  (Parada Investigation Report 76–80.)  On this record, the stronger inference is that CSUB suspended Nuño because of the pending investigations, Nuño's alleged violations of the interim measures, and the investigation findings on Parada's complaint, rather than because of Nuño's protected activity.

Nuño argues that because "[n]o new predicate conduct occurred" during the thirty-one day period between this lawsuit and his suspension, CSUB suspended him because of his protected activity.  (Mot. 14.)  However, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).  Nuño fails to show that CSUB's desire to retaliate was the but-for cause for Nuño's suspension.  Thus, Nuño has failed to show that he is likely to meet his burden to show a prima facie case of retaliation under Title VII.

### b.    Nonretaliatory Reason & Pretext

Even if Nuño could establish a prima facie case, Defendants' have articulated legitimate, nonretaliatory reasons for the suspension, and Nuño failed to present any evidence that those reasons were "pretextual."  *Reynaga*, 847 F.3d at 693.

As discussed above, CSUB had ample, lawful reasons to suspend Nuño and Nuño fails to show that Defendants' reasons are pretextual by persuading the Court that a retaliatory reason "more likely motivated" Defendants or by showing that Defendants' "proffered explanation is unworthy of credence."  *See Texas Dep't of Cmmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

Accordingly, the Court finds that Nuño has not shown that he is likely to succeed on the merits of his Title VII retaliation claim.

### 3.    *First Amendment Retaliation*

Nuño contends that he shows a likelihood of success on the merits of his First Amendment retaliation claim because CSUB suspended him for his "academic speech" about the "graduate program standards," the appointment of CSUB's Graduate Director, and "departmental governance." (Mot. 16.)  Defendants argue that Nuño cannot show a likelihood of success on the merits because his speech did not involve a matter of public concern.  (Opp'n 17–19.)

Courts evaluate First Amendment retaliation claims under a "burden-shifting approach" set forth by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968).  *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1137 (9th Cir. 2025).  "First, a plaintiff must establish a prima facie case of retaliation." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 721 (9th Cir. 2022).  If the plaintiff meets his burden, the burden shifts to the defendant to show that its legitimate interests "outweigh the plaintiff's First Amendment interests." *Id.* (citation modified).

To establish a prima facie case, the plaintiff must prove that (1) he engaged in protected speech; (2) the defendant took an "adverse employment action"; and (3) the plaintiff's speech was a "substantial or motivating" factor for the adverse employment action. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).

Here, even assuming that Nuño's speech is protected, Nuño fails to show that his speech was a "substantial or motivating factor" for his suspension.  A plaintiff can show that retaliation was a substantial or motivating factor behind an adverse employment action by introducing evidence regarding the "proximity in time between the protected action and the allegedly retaliatory employment decision." *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001).  The plaintiff can also introduce evidence that "his employer expressed opposition to his speech, either to him or to others." *Id.*  Finally, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pretextual." *Id.* at 752.

Nuño offers no such evidence. As discussed above, although temporal proximity can support an inference of retaliatory motive, the surrounding factual context concerning faculty complaints, interim measures, violation of those measures, and investigation results, weaken that inference. Nuño also fails to introduce evidence that CSUB expressed opposition to his speech and CSUB's directives do not identify Nuño's viewpoints or academic criticism as the basis for its action. (*See generally* 2025 Interim Measures; August 2025 Suspension.) The record also does not show that Defendants targeted Nuño because of his protected speech. Instead, it shows that CSUB acted to preserve investigative integrity and prevent potential workplace disruption. (*See generally* 2025 Interim Measures; Reprimand; August 2025 Suspension.)

The Court finds that Nuño has failed to show that he is likely to meet his burden to show a prima facie case of retaliation under the First Amendment. Thus, the Court declines to address the remaining step of the *Pickering* balancing test. *Ostly v. City & County of San Francisco*, No. 21-cv-08955-EMC, 2023 WL 4053800, at *5 (N.D. Cal. June 15, 2023), *aff'd*, No. 23-16000, 2024 WL 3963839 (9th Cir. Aug. 28, 2024) (declining to address the remaining steps of the *Pickering* balancing test after finding that the plaintiff failed to establish a prima facie First Amendment retaliation case).

Accordingly, the Court finds that Nuño has not shown that he is likely to succeed on the merits of his First Amendment retaliation claim.

### 4. ADEA

Defendants argue that, as a threshold jurisdictional matter, Nuño failed to properly exhaust his ADEA clam. (Opp'n 20–21.) They contend that Nuño's EEOC charge "does not make any reference to his age" and that "[b]y making such claims now," Nuño "attempt[s]to impermissibly expand the scope of his claims beyond the jurisdiction of this Court." (*Id.* at 21.) Nuño responds that his ADEA claim has been properly exhausted because "age-related allegations rest on the same operative facts already in the charge." (Reply 10, Dkt. No. 56.)

"When a statute requires exhaustion," the "failure to do so deprives th[e] court of jurisdiction." *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir. 1985).  The ADEA mandates that "[n]o civil action may be commenced . . .  until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."  29 U.S.C. § 626(d)(1).  "The scope of a civil action alleging age discrimination is limited by the charge filed with the EEOC."  *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (1990).  "The district court has jurisdiction over any charges of discrimination that are like or reasonably related to the allegations made in the EEOC charge, or that fall within the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Deppe*, 217 F.3d at 1267 (citation modified).

Nuño does not dispute that his EEOC charge makes no reference to his age.  (*See generally* Reply.)  However, he argues that his "age-related allegations rest on the same operative facts already in the charge, including the preference for a less-qualified white faculty member . . . and the subsequent elevation of substantially younger faculty into governance roles while the most senior faculty member was excluded."  (*Id.* at 10.)

Even construed with the "utmost liberality," *Leong*, 347 F.3d at 1122, Nuño's EEOC charge, and subsequent letter make no reference that CSUB discriminated against him based on his age.  To the contrary, Nuño alleged "race" discrimination, only, and that CSUB favored a white faculty member over him.  (EEOC Charge 2–3; EEOC Letter 2.)  Nuño's EEOC allegations are thus based on alleged "racial discrimination" and do not also suggest a claim of age discrimination.  *See Encinas v. Tucson Elec. Power Co.*, 76 F. App'x 762, 763 (9th Cir. 2003) (holding that the plaintiff's EEOC charge of "race" discrimination was "unexhausted" because it was not "expected to grow out of [the plaintiff's] national origin charge").  Thus, the Court finds that Nuño has not exhausted his remedies regarding his age discrimination claim under the ADEA.

Accordingly, the lacks jurisdiction over Nuño's ADEA claim.  In light of this finding, the Court declines to reach the merits of Nuño's claim or Defendants' alternative argument that sovereign immunity prevents an injunction against CSUB.

**B.      Remaining *Winter* Factors**

As the Court finds that Nuño fails to show a likelihood of success on the merits, the Court need not consider the remaining *Winter* factors.  *See Advertise.com, Inc. v. AOL Advert., Inc.*, 616 F.3d 974, 982 (9th Cir. 2010) (declining to address the remaining *Winter* factors after concluding that the plaintiff was unlikely to prevail on the merits).

## V.      CONCLUSION

For the reasons discussed above, the Court **DENIES** Nuño's Preliminary Injunction.  (Dkt. No. 51.)

**IT IS SO ORDERED.**

May 29, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

15